## Schmidt's Estate.

*Wills—Construction—Spendthrift trusts—Liability of principal to execution—Claim by wife and children for support.*

Under a clause in a will providing that the principal of the fund shall not be liable for the debts, contracts or engagements of the *cestui que trust*, whether by assignment, anticipation or otherwise, no part of the principal can be assigned under an agreement with his wife, as a provision for the children of the marriage, and a judgment entered by confession under a warrant in a note given for the amount so assigned cannot be enforced against the principal of the trust fund by attachment execution.

Exceptions to adjudication.   O. C. Phila. Co., Jan. T., 1917, No. 187.

The facts appear from the following extract from the adjudication of VAN DUSEN, J., Auditing Judge:

Gretta W. Schmidt died Dec. 26, 1915, and this trust arises under the residuary clause, whereby she gave her estate, real and personal, to the Fidelity Trust Company to pay the income to her two sons, J. F. W. Schmidt and Charles P. W. Schmidt, "at such times and in such amounts as to my said trustees may seem proper," until each of the sons reached thirty-five years of age, and then in trust to pay over to each one-half of the principal and accrued income. "The said principal and income to be in no manner subject to or liable for the debts, contracts or engagements of my said sons, whether by way of assignment, anticipation or otherwise."

J. F. W. Schmidt reached the age of thirty-five and his share was distributed and the present account is of that half of principal which is to go to Charles P. W. Schmidt. He became thirty-five years of age on June 16, 1924.

Several claims against Charles P. W. Schmidt, founded on assignments, attachments *sur* judgment and warrants of seizure, were presented and will be stated in detail below. To dispose of them, it becomes necessary to determine the general question whether the principal of the trust estate is subject to assignment or to seizure by legal process for "debts, contracts or engagements" in the course of its transmission from the trustee to the beneficiary.

It is not questioned that this is a valid spendthrift trust as to income. Hall's Estate, 248 Pa. 218, is cited for the proposition that a spendthrift clause referring to income does not affect the principal. The present case differs radically, however, from Hall's Estate, in that the language quoted above applies expressly to principal as well as to income; and the case is, therefore, like Beck's Estate, 133 Pa. 51; Goe's Estate, 146 Pa. 431; Hartman's Estate, 31 Pa. Superior Ct. 152. All these cases dealt with the principal of a legacy and not with the income of the usual spendthrift trust, and all held that language, not materially different from that used in the present

case, applied to and protected the whole of the legacy. Indeed, I see very little that can be said on the other side of this question. . . .

Claim of the Bank of North America and Trust Company (successor to Commercial Trust Company), trustee for Margaretta Schmidt and Charles Schmidt (children of Charles P. W. Schmidt), by virtue of an assignment dated Aug. 15, 1919, by Charles P. W. Schmidt to the trust company of the sum of $6000 out of the principal now payable to him, notice of which was given to the trustee. Said assignment was made pursuant to an agreement of the same date with his former wife, now divorced. It is made in consideration of natural love and affection and for the purpose (stated in the agreement) of making a provision for his children. It was argued that this assignment was made in fulfillment of the high obligation resting upon the assignor to support his children, and that it, therefore, became something which should not be called an assignment, but had a nobler rank. By what other name it should be called, I do not know, and it is an assignment or nothing, whatever lies back of it. That it has no exalted position free of the restraints of a spendthrift trust is established by Hartman's Estate, 31 Pa. Superior Ct. 152, where the same situation existed (an assignment for support of a wife), and the same argument was made; and also by Thackara v. Mintzer, 100 Pa. 151, and Board of Charities v. Lockhard, 198 Pa. 572. In the latter cases it was held that neither an attachment issued on a decree for alimony nor a warrant of seizure for the support of wife and children were effective as against a spendthrift trust. It is true the language in each of those cases was broader than that in the present case, but the principle applies as well to the voluntary "engagement" of the beneficiary for a similar purpose, with which we are for the moment concerned. This claim is, therefore, not allowed.

An alternative claim was presented by the Bank of North America and Trust Company, based on a judgment in Common Pleas No. 1 of Philadelphia County, March Term, 1922, No. 5335, for $6300, with interest from June 16, 1924. This judgment was entered by virtue of a judgment note, which is mentioned in the above agreement as being given as an additional obligation to evidence the same claim. On this judgment an attachment execution was issued June 14, 1924, and served upon the Fidelity Trust Company, "executor" of Gretta W. Schmidt. Like the assignment, this obligation comes within the prohibition of the will against liability for "debts, contracts or engagements," and the claim is rejected. . . .

*Robert T. McCracken* and *William A. Gray*, for exceptants.

*Samuel Peltz*, contra.

LAMORELLE, P. J., Nov. 26, 1924.—In the instant case *principal*, as well as income, was not to be liable for debts, contracts or engagements of the *cestui que trust*, whether by assignment, anticipation or otherwise. The will, therefore, differed from that in Hall's Estate, 23 Dist. R. 1029, wherein *income* alone was subject to the spendthrift clause. Whether we call the paper by which the *cestui que trust* assigned and transferred a part of the *corpus*, during the life of the trust, a deed poll, or not, is really beside the question. It was in fact an attempt by the *cestui que trust* to exercise a power not conferred upon him, and, therefore, of no legal effect; nor could a note given by him as a collateral undertaking rise higher than its source.

In determining questions which arise under spendthrift trusts, we should not ignore what is so well said by Mr. Justice Stewart in Morgan's Estate (No. 1), 223 Pa. 228, 230: "The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of *cujus est dare, ejus est*

Schmidt's Estate.

*disponere.* It allows the donor to condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion: Holdship *v.* Patterson, 7 Watts, 547. It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the law; it has regard solely to the rights of the donor. Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone. They allow the donor to so control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's right of property."

Applying the principle of this case to the facts in the instant case, we find no error in the rulings and conclusions of the auditing judge.

Accordingly, all exceptions are dismissed and the adjudication is confirmed absolutely.