# Weaver Estate

*High, Swartz, Childs & Roberts*, and *Morgan, Lewis & Bockius*, for accountant.

*Allen R. Keely* and *Bertram Balch, Jr.*, for exceptants.

TAXIS, P. J., March 24, 1958.—Central-Penn National Bank of Philadelphia, guardian of Robert Kampmann, 3rd, Eric Kampmann, David Kampmann and Stephen Kampmann, minors, and Joseph E. Keller, guardian of Thaddeus H. Brown, 3rd, Bettina Simpson Brown, Marshall Brown and Roberta W. Sarbacher, minors, and Citizens Fidelity Bank and Trust Company of Louisville, guardian of Marion Kampmann Horner and Robert Ballard Horner, Jr., minors, filed objections to the supplemental schedule of distribution complaining that the trustee, during the course of the administration of the estate, made an overpayment of income in the amount of $10,762.46 due to a mistake of law, i.e., improper interpretation of the will, and that in the supplemental schedule of distribution the trustee has proposed to deduct from the shares of the various minors mentioned above proportionate charges of this $10,762.46 to adjust the share of trust income pursuant to and in conformity with the opinion of the Supreme Court: Weaver Estate, 390 Pa. 128. The question for determination on these objections is whether a trustee is able to recoup overpayments made to a ward, such overpayments having been made pur-

suant to a mistake of law, particularly where there are spendthrift provisions in the will.

The supplemental schedule of distribution was filed by the accountant following the decision of the Supreme Court, which held that certain withdrawals of principal made by the Kampmann children should not be charged against corpus generally but allocated against the share of principal ultimately distributable to the Kaupmann line.

The trustee in its account charged the principal withdrawals against the entire corpus and as a result the Macklin line was deprived of a proportionate share of the income which would have been earned by the withdrawn money had it been charged as the Supreme Court directed.

The accountant had, for some years under the provisions of the will, been paying up to a permitted $25,-000 a year from income to each of the three adult Kampmann children, and after deducting this $75,000 payment from half of the income of the trust, had in its hands further income which, under the terms of the will, it was entitled to and did pay to the next generation of the Kampmann line. This excess income would have been less had the trustee charged the principal withdrawals to the Kampmann line share of principal.

It was in an effort to readjust this income account, in order to follow the Supreme Court ruling, that the accountant has charged excess income otherwise remaining and available to the second generation of the Kampmann line with this overpayment of income made to them by reason of a mistake in the interpretation of the will.

The guardians of the minor Kampmann children have questioned by these objections the right of the trustee thus to recoup the overpayment made to their wards.

In the objections filed the guardians have stated: "Although feeling that in equity and good conscience the trustee should be entitled to recoup the aforementioned payment of interest, it is concerned about the proposal . . . in view of the spendthrift clauses in the decedent's will and in view of the substantial doubt cast upon the right of the trustee to recoup money paid under mistake of law by Heyl Estate, 352 Pa. 407, and Kennedy's Estate, 321 Pa. 225, the latter being cited in . . . Day Trust Company v. Ayer, 6 D. & C. 142."

In Union Trust Company of New York v. Gilpin, 235 Pa. 524, the trustee paid a portion of principal to the wrong party and sued to recoup this payment. The lower court directed judgment for plaintiff which was affirmed per curiam by the Supreme Court and the following language used: "We mean distinctly to assert that where money is paid by one under a mistake of his rights and his duty in which he was under no legal or moral obligation to pay and which the recipient has no right in good conscience to retain, it may be recovered back in an action of indebitatus assumpsit whether such mistake be one of fact or law; and this we insist may be done both upon principle of Christian morals and the common law.

"The case affords a good illustration of the modern tendency of the courts to limit the earlier doctrine which denied in general the right to recover where money has been paid under a mistake of law." Cf. Brennan's Estate, 65 Pa. 16; Mulholland's Estate, 154 Pa. 491.

The principle is stated in A. L. I. Restatement of the Law of Trusts §254, as follows: "Overpayment To One Beneficiary. If the trustee has made a payment out of trust property to one of several beneficiaries to which the beneficiary was not entitled, such beneficiary is personally liable for the amount of such overpayment, and his beneficial interest is subject to a

charge for the repayment thereof, unless he had so changed his position that it is inequitable to compel him to make repayment."

Comment (c) §254 of A. L. I. Restatement of the Law of Trusts, provides: "Spendthrift Trust. The rule stated in this Section is applicable although the interest of the beneficiary who is overpaid is not transferable by him or subject to the claims of his creditors."

On the equities of the case no reason has been advanced why recoupment should be denied. It is conceded that there was no change of position. Moreover, objectors concede that in equity and good conscience the trustee should be entitled to recoupment. No one is harmed by the recoupment and justice and equity require that it be allowed.

And now, March 24, 1958, the objections are dismissed and the supplemental schedule of distribution is approved as filed.