## Miller Estate

*J. Brooke Aker* and *Harry W. Kurtzman,* for testamentary guardian.

*Paul I. Guest,* for domiciliary guardian.

TAXIS, P. J., November 8, 1971.—This petition has been filed by the Barnitz Bank, of Middletown, Ohio. It seeks an order directing Estella A. Miller, testamentary guardian of Marian K. Miller and Janet A. Miller, minors, to pay over to the bank all assets held by her as guardian.

The petition sets forth that the bank was appointed guardian of the estates of both minors on February 17, 1971, by the Probate Court of Butler County, Ohio, where the minors now reside. The petition further recites that two days later, on February 19, 1971, this court confirmed the appointment of Estella A. Miller as testamentary guardian of the same minors, presently 11 and seven years of age. The minors are the daughters of Louis V. Miller, M. D., who died by his own hand on January 18, 1971. His surviving spouse, Jacqueline L. Miller, M. D., moved immediately with the children to Ohio.

In his will, Louis V. Miller left one-fourth of his estate to Jacqueline L. Miller, his wife, and the balance to his mother, Estella A. Miller, in trust for his children, and also named Estella A. Miller guardian of their estates, as well as executrix. The total value of the assets to be received for the benefit of the minors is not exactly known, but may exceed $60,000. They will come both from jointly-owned securities and from several insurance policies on decedent's life, claims for which will have to be pursued in several States other than Pennsylvania. The petition then alleges that removal of the assets from Pennsylvania will not affect the minors'

ownership of the same, and will be for the best economic interests of the minors. The prayer for relief is based upon section 1121 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.1121.

An answer to the petition alleges that: (1) The petition for appointment of the Ohio guardian did not advise the Ohio court of the provisions in decedent's will appointing a testamentary guardian; (2) our order confirming the appointment of the guardian on February 19, 1971, was augmented by another order, dated August 12, 1971, finding that there was no reason to remove the testamentary guardian and directing that the proceeds of all life insurance policies naming the minors as beneficiaries should be paid to Estella A. Miller as testamentary guardian; and (3) the allowance of the petition would violate section 18 of the Wills Act of April 24, 1947, P. L. 89, as amended, 20 PS §180.18, which establishes the right to appoint a testamentary guardian, and section 1121 of the Fiduciaries Act, supra, since that section, providing for the transfer of assets from a Pennsylvania guardian to a foreign guardian under certain circumstances, applies only to court-appointed guardians and not to testamentary guardians. The matter has been argued and briefs submitted.

After lengthy study, we conclude that section 1121, aforesaid, will not allow the relief requested by petitioner. While there have not been many cases decided under this section, the problem before us is resolved by specific statutory language which this court has no power or authority to alter. Section 18(b) of the Wills Act authorizes the appointment of a testamentary guardian for property passing under the will, or by intestacy, or for the proceeds of life insurance or annuity contracts, or when a major part of the minor's property was transferred inter vivos by gift. Testator did so act, and his appointment of the guardian became effective

when his will was probated, on February 1, 1971. Our subsequent decrees, accurately referred to as in "confirmation" of the actual appointment, were only for procedural purposes, and did not change the date of appointment in any respect. Thus, to the extent that priority of appointment may be involved, the testamentary guardian was named first, and it would have been much better to bring this to the attention of the Ohio court, which seemingly was not done, as that court might then have found no need for a domiciliary guardian. A named testamentary guardian in Ohio, as in Pennsylvania, is entitled to a preference as to the appointment: 67 A. L. R. 2d 803; Henicle v. Flack, 3 Ohio App. 444 (1914). Of course, it does not automatically follow that the Ohio guardianship cannot have a purpose; the testamentary guardianship encompasses only assets received from or through the appointing testator. Nevertheless, it would have been preferable, and might have avoided the present dispute, to have submitted all of the particulars of this situation to the Ohio court. Be that as it may, however, the appointment of Estella A. Miller as testamentary guardian is valid.

Nor, as we found at the time of our order of August 12, 1971, is there any substantial reason for the removal of Estella A. Miller as testamentary guardian, if that were sought. The grounds for such removal appear in section 331 of the Fiduciaries Act. By subsection (5), the only provision which could possibly apply here, we may remove a guardian ". . . when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office." However, even if we could conclude that it might be preferable from the minors' standpoint to have an Ohio guardian, this would be no ground, since subsection (5) clearly is to safeguard the *estate* within the guardian's control, and not the minors personally. It is a "mop-up" provi-

sion in a sense, but it does not give us the power to remove a guardian except to protect the estate. We, therefore, pass to the main issue raised, which is the applicability of section 1121 of the Fiduciaries Act of 1949.

That section begins, "When the minor for whose estate a guardian has been appointed by the court is or becomes a nonresident of the Commonwealth, . . ." There follows the grant of power to the court to direct the "locally appointed" guardian to transfer the assets of the minor to a duly qualified foreign guardian. It is thus plain that section 1121 does not apply to other than court-appointed guardians, and that this court, obtaining its powers as it does from statutory grant, is bound by its limitations. And undoubtedly, Pennsylvania law observes a distinction between court-appointed guardians and testamentary guardians in other areas as well. For example, section 1022(a) of the Fiduciaries Act excuses testamentary guardians from posting bond, while in general requiring other individual guardians to enter security. The commission's comment following this section shows clearly that it represents the same long-established rule that also frees executors and named trustees from entering security, presumably by virtue of the personal confidence reposed in them by the testator or settlor himself. Further, section 1045 of the same act specifically provides that the powers, duties and liabilities of a guardian not appointed by the court shall be the same as those of a court-appointed guardian. And in Bregy, Pennsylvania Intestate, Wills and Estates Acts of 1947, page 3703, the author comments to the same effect when he says that the Fiduciaries Act and the cases construing it govern the appointment of guardians by the court and the powers and duties of both court-appointed and will-appointed guardians.

There is nothing in these examples, however, to

suggest any reason for the distinction between testamentary and court-appointed guardians in section 1121, when the issue is a transfer of assets to a foreign domiciliary guardian; indeed, they seem to suggest that both types of guardians should be regarded in the same legal light wherever possible. Nevertheless, the statutory language exists, and possibly may be explained by the recognition of the right of a testator or donor to attach reasonable conditions to his gifts or bequests. For example, spendthrift trusts are enforced in observation of the donor's or testator's intent, Heyl Estate, 352 Pa. 407, and not out of concern for the beneficiary. When a donor or testator creates a gift of his property in trust, as decedent has here, ". . . the law holds that the donor has an individual right of property in the execution of the trust . . .": Heyl Estate, supra, 411. Such a right in the decedent was created by the Wills Act when it permitted him to choose the guardian of the property which would pass to his children, and until the legislature, by change to section 1121 or otherwise, allows us to modify that right, we should not do so.

We must state, however, that we are by no means satisfied that the result required by the language of the act, clear as it appears, was really intended by its draftsmen. The commission's comment merely states that the section was suggested in part by section 58(h) of the Fiduciaries Act of 1917. But reference to that statute shows that its language did not contain the distinction with which we are dealing here, for it encompassed all trusts over which the court had jurisdiction, and specifically included trustees appointed by will, in authorizing the transfer of trust assets to a foreign fiduciary under certain circumstances. Further in the case of trusts, section 309 of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.309, allows

the situs of either a testamentary or inter vivos trust to be changed so long as ". . . the court shall find the change necessary or desirable for the proper administration of the trust." No distinction is drawn between trustees named by a testator or settlor and those named by a court, and none of the several cases decided under section 309 indicate that such a distinction would have any effect upon its application.

This case represents an unfortunate confrontation between decedent's mother and wife. In it, we are being required to reach a result where decisions concerning the minors' estates will be made by the mother, but the daily responsibility of raising and caring for the children themselves, and determining and supplying their needs, will be in the wife. These two parties are clearly at odds, and a separation of hundreds of miles, of which fact decedent could not have known, hardly helps. Nevertheless, our legislature has adopted language which requires that the directions of the testator take precedence over personal considerations of this sort, and accordingly the petition is dismissed.